IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 08-cv-02139-LTB-KLM

ST. PAUL FIRE AND MARINE INSURANCE COMPANY,

    Plaintiff,

v.

ALSTOM POWER, INC.,
TIC - THE INDUSTRIAL COMPANY,
ZURICH AMERICAN INSURANCE COMPANY,

    Defendants.
_____

**ORDER**
_____

THIS MATTER is before me on Plaintiff St. Paul Fire and Marine Insurance Company's Motion for Summary Judgment, filed June 1, 2010 (docket #94); Alstom Power, Inc.'s Response, filed July 7, 2010 (docket #105); St. Paul's Reply, filed July 21, 2010 (docket # 108) and Alstom's Motion for Partial Summary Judgment Against St. Paul on Indemnity, filed June 1, 2010 (docket #95); Plaintiff's Response, filed July 7, 2010 (docket #106); and Alstom's Reply (docket # 109), filed July 23, 2010. Oral argument will not materially aid resolution of these motions. Although I typically address each motion for summary judgment separately, I will address these motions in one order as the evidence, facts, and nature of the arguments in each motion are very similar. In fact, the parties frequently cross reference their own respective motions in their responses to the other party's motion.

1

For the reasons stated in this order, St. Paul's motion is granted and Defendant Alstom's motion is denied. On July 30, 2010, St. Paul filed a Motion to Strike Portions of Alstom's Reply in Support of Motion for Summary Judgment Against St. Paul as to Liability and Motion to Submit Sur-Reply (docket #114), that motion is also denied.

I. STATEMENT OF FACTS

St. Paul issued the following policies to TIC, as the named insured, subject to their terms and conditions, during the following policy periods:

- Policy No. KK08300747, effective January 1, 1999 to January 1, 2000;
- Policy No. KK08301063, effective January 1, 2000 to January 1, 2001;
- Policy No. KK08301408, effective January 1, 2001 to January 1, 2002;
- Policy No. KK08301708, effective January 1, 2002 to January 1, 2003;
- Policy No. KK08301913, effective January 1, 2003 to January 1, 2004;
- Policy No. KK08301976, effective January 1, 2004 to January 1, 2005.

These policies are the "St. Paul Primary Policies." St. Paul also issue the following commercial umbrella policies to TIC:

- Policy No. 583XM8437, effective January 1, 1999 to January 1, 2000;
- Policy No. 583XM8438, effective January 1, 2000 to January 1, 2001;
- Policy No. 583XM8439, effective January 1, 2001 to January 1, 2002;
- Policy No. 583XM8440, effective January 1, 2002 to January 1, 2003;
- Policy No. 583XM8441, effective January 1, 2003 to January 1, 2004;
- Policy No. KG08301495, effective January 1, 2004 to January 1, 2005.

These policies are the "St. Paul Umbrella Policies."

In 1999, ABB Power Generation, Inc., which later became Alstom, contracted with Hays Energy Limited Partnership (Hays) to act as a general contractor for the construction of a power plant (the Plant). On July 2, 1999, Alstom entered into a subcontract agreement with TIC under which TIC agreed to provide certain construction services for the Plant, including the welding of high-pressure piping, called P91 piping. Alstom provided, manufactured and installed the P-91 piping system and TIC did the welding work on that piping system.

By letter dated February 9, 2007, Hays notified Alstom of the discovery of "Latent Defects" at the project. The letter stated that the "Latent Defects are predicated on the basis of ALSTOM Power Inc. failing to meet the minimum design life and failure to conform to the standards of material and workmanship prevailing in the industry as defined under the Contract." In February and March of 2007, Hays and Alstom exchanged several letters regarding the "Latent Defects" at the project. By letter to TIC dated March 26, 2007, Alstom stated that the welds in question were performed by TIC and that the welds may not have been compliant with code or the subcontract. Alstom provided notice to St. Paul of the latent defect claim against it. St. Paul provided a defense under the St. Paul Primary Policies for Alstom against the latent defect claim, subject to a full reservation of rights and a partial denial of coverage.

On May 17, 2007, a demand for arbitration was filed by Alstom against TIC in connection with the welds. In the arbitration proceeding, Alstom sought to have TIC pay the amount that Alstom paid to Hays to replace the welds at the project. On October 23, 2007, Alstom and Hays entered into a Settlement Agreement in connection with Hays' latent defect claim. Alstom is seeking to recover from St. Paul $16,084,833, the claimed

value of Alstom's settlement payment to Hays. On December 4, 2008, an Award of Arbitrator was entered in the arbitration proceeding denying Alstom's claims against TIC in their entirety.

St. Paul filed the present action seeking, with respect to Alstom, a declaration that it owes no duty to indemnify under the insurance policies issued to its insured, TIC, as to the claim made by Hays against Alstom, a putative additional insured under the policies, for the "latent defects" at the power plant built for Hays.

II.  STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is not proper if—viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor—a reasonable jury could return a verdict for that party. *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992).

The non-moving party has the burden of showing there are specific issues of material fact to be determined. *Celotex, supra*, 477 U.S. at 322. If there are genuine issues of fact, the granting of summary judgment is not in order. *United States v. Fisher-Otis Co., Inc.*, 496 F.2d 1146, 1149 (10th Cir. 1974). It is not enough that the evidence be merely colorable; the burden is on the non-moving party to come forward with specific facts showing a genuine issue for trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A fact is material if it might affect the

outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment, therefore, is granted only if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Lucas v. Mountain States Tel. & Tel.*, 909 F.2d 419, 420 (10th Cir. 1990); Fed. R. Civ. P. 56(c).

In a motion for summary judgment, I view the evidence "through the prism of the substantive evidentiary burden." *Liberty Lobby, supra*, 477 U.S. at 254. The inquiry is based on "the quality and quantity of evidence required by the governing law" and "the criteria governing what evidence would enable the jury to find for either the plaintiff or the defendant." *Id.* Accordingly, in a bad faith/breach of insurance contract case, the non-moving party must show material facts in dispute by a preponderance of the evidence in order to defeat a motion for summary judgment. See, e.g., Colo. Jury Instr., Civil 3:1 (2006) ("To prove something by a 'preponderance of the evidence' means to prove that it is more probably true than not.").

III.     ANALYSIS

St. Paul argues that the claim for the cost to replace the welds is not covered under the St. Paul Policies as it does not constitute "property damage" as defined within the policies.

The term "property damage" is defined in the St. Paul Policies to mean:

- Physical damage to tangible property of others, including all resulting loss of use of that property; or
- Loss of use of tangible property of others that isn't physically damaged.

5

St. Paul notes that the settlement agreement specifically provided that Hay and Alstom would not be liable to each other for any cause of action for any loss of use. And there is no evidence that the settlement includes any amount for "physical damage to tangible property of others....". Therefore, St. Paul argues there is no coverage under the St. Paul Policies because the Hays Settlement does not include any amount of "property damage."

Alstom states that the undisputed facts establish that Alstom paid $16 million to repair and replace those parts of the P-91 piping system that were damaged by TIC's defective welding. TIC's use of low chromium weld filler material subjected the affected areas of the piping system to excessive creep. Alstom asserts that the microstructural changes to the P-91 piping system constitute "physical damage to the tangible property fo others," which is how the St. Paul policies define property damage. Alstom goes on to state that the P-91 piping system is tangible property and that the piping system belongs to Hays, not named insured TIC, so it is the "property of others."

In its Reply, St. Paul responds that Alstom's contention that the alleged excessive creep constitutes "property damage" is contrary to the position Alstom took in its answers to written discovery propounded in this action and to its position in the arbitration proceeding. St. Paul also argues that Alstom is bound by its answers to interrogatories in this action. In response to an interrogatory propounded by St. Paul, Alstom asserted that "[a]ll P-91 piping...experienced property damage as a result of the rogue weld performed by TIC. Specifically all P-91 piping used at the Plant experience increased creep cracking, reduced joint integrity and life expectancy." St. Paul also points out that

6

Alstom admitted in the arbitration proceeding that property damage was not an issue, and it has not attempted to refute that fact here.

Finally, St. Paul asserts that by Alstom admitting that it is only seeking indemnity from St. Paul for damage caused by excessive or accelerated creep, occurring between the Plant's 2002 start up and 2007, Alstom admits that it is not seeking to recover under the St. Paul Primary Policies Nos. 1, 2, and 3 and the St. Paul Umbrella Policies Nos. 1, 2, and 3.

In Colorado, "the duty to indemnify relates to the insurer's duty to satisfy a judgment entered against the insured" and "arises only when the policy actually covers the alleged harm" that underlies the entered settlement. *See Admiral Ins. Co. v. Hosler*, 626 F. Supp. 2d 1005, 1112 (D. Colo. 2009). "Indemnity flows from the nature of the ultimate verdict, judgment, or settlement." *Id. Citing Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 301 (Colo. 2003). "The determination of whether an insurer has a duty to indemnify requires factual development, as it is largely a question of fact. *Id.* In determining whether an insurer has a duty to indemnify, the court should review the underlying complaint against the insured to determine whether "the facts pled, claims asserted and relief sought do arguably include a loss for which an insured would potentially be liable." *Id.* In this case, Hays did not file a formal complaint. Instead, this case is based upon Hays' letters to Alstom and the ensuing Hays/Alstom Settlement Agreement. *See Compass Ins. Co. v. City of Littleton, Colorado*, 984 P.2d 606, 615 (Colo. 1999).

> Where the claims do not proceed through the crucible of trial, and instead are settled by the parties, the analysis becomes more difficult. Again, the

> first step must be the final version of the complaint, for if no colorable claim
> is made that would invoke indemnification coverage, then the presumption
> is that no such coverage exists. However, notice pleading does not
> contemplate detail and specificity, and certainly, a trial court could review
> other matters in arriving at a conclusion as to whether some portion or all of
> the settlement would be properly subject to indemnification.

*Cyprus Amax Minerals*, 74 P.3d 294,301-302 (Colo. 2003). Extrinsic evidence may assist the trial court in determining whether and to what extent actual liability, as represented by a verdict or settlement, is covered by an existing policy. *Id.*

I will first look at the allegations contained in the Hays/Alstom Letters to see if there is a colorable articulation of facts that could lead to a finding of liability under the policies. It need not specifically discern a cause of action for "property damage." *See Cyprus* 74 P.3d at 294.

The parties vigorously dispute what constitutes "property damage" under Colorado law. Alstom asserts that accelerated creep is property damage under the policy and that such damage is analogous to that of accelerated corrosion of a roof. *See American Employer's Insurance Co. v. Pinkard Construction Co.*, 806 P.2d 954, 955 (Colo. App. 1990). Alstom also asserts that the controlling precedent in this case is *Adiar Group v. St. Paul Fire and Marine Insurance,* 477 F.3d 1186, 1188 (10th Cir. 2007). There the Tenth Circuit reviewed Colorado case law and identified several Colorado cases in which "additional damage that resulted from faulty workmanship was deemed to be covered under the policies." *Id.*

But the letters do not manifest allegation of property damage sufficient to invoke indemnification coverage. Rather, they address that "Latent Defects are predicated on the basis of ALSTOM Power, Inc. failing to meet the minimum design life and failure to

8

conform to the standards of material and workmanship prevailing in the industry as defined under the Contract."

As evidence of the property damage that allegedly took place, Alstom cites to Hays letter dated February 16, 2007 which states:

> During the current "C" inspection outages for U1 and U2 inspection/testing of a sampling of the total population of steam pipe welds where the piping material is specified as P-91.
> The inspections are driven by international data that p-91 weld are subject to creep cracking which reduced the joint's integrity and life expectancy.

St. Paul Motion for Summary Judgment, Exhibit 11. This paragraph does not point to any current property damage. Rather it simply states that the pipe welds were inspected due to international data which states that the welds are subject to creep cracking. No where in any of the letters is it claimed that creep cracking or accelerated creep was occurring.

Further, *American Employer's Insurance Co., supra,* is distinguishable from this case because the question at issue there was what constituted an occurrence to trigger policy coverage, not whether the accelerated corrosion of the roof was property damage. As for the cases listed in *Adair Group*, *supra*, this case is distinguishable from those cases because the letters at issue in this case contain no allegation of property damage. Instead Hays repeatedly alleges faulty workmanship in the use of the incorrect filler material which caused a latent defect.

And, the settlement itself reflects only payment for the discovery of Latent Defects with respect to the filler material used in the welding of P91 piping. Alstom points to absolutely no extrinsic evidence relating to the Hays settlement which would allow me to

9

determine otherwise.  Indeed, Alstom admitted in the arbitration proceeding that property damage was not an issue.  Therefore, I find and conclude that no portion of the settlement amount was attributable to "property damage" as defined by the policies.  As such, there are no genuine issues of material fact that preclude summary judgment in Plaintiff's favor as to whether Plaintiff has a duty to indemnify.  I need not address the many other meritorious arguments raised by St. Paul as to why summary judgment is otherwise appropriate under the St. Paul policies.

St. Paul also asserts that it is entitled to summary judgment on Alstom's counterclaims.  Alstom formally withdraws its claim against St. Paul for violation of the Texas Insurance Code.  As to the breach of contract and breach of the common law duty of good faith and fair dealing claims, because a reading of the pleadings reveals that these claims are based on what I have determined to be St. Paul's proper refusal to indemnify, summary judgment is appropriate as to these claims as well.  *See Tynan's Nissan, Inc. v. Am. Hardware Mut. Ins. Co.*, 917 P.2d 321, 326 (Colo. App. 1995); *Miller v. Hartford Cas. Ins. Co.*, 160 P.3d 408, 412 (Colo. App. 2007).

IV. <u>CONCLUSION</u>

Plaintiff St. Paul Fire and Marine Insurance Company's Motion for Summary Judgment, filed June 1, 2010 (docket #94) is **GRANTED**. Alstom's Motion for Partial Summary Judgment Against St. Paul on Indemnity, filed June 1, 2010 (docket #95) is **DENIED**.  Judgment shall enter in favor of St. Paul and against Alstom with costs awarded to St. Paul.  St. Paul's Motion to Strike Portions of Alstom's Reply in Support of

Motion for Summary Judgment Against St. Paul as to Liability and Motion to Submit Sur-Reply (docket #114) is **DENIED**.

Dated: August __31__, 2010.

BY THE COURT:

__s/Lewis T. Babcock__
Lewis T. Babcock, Judge